InsiiEY, J.
This action was instituted against the defendant to compel him to render to his daughter, the plaintiff, and to file in court an account of tutorship, and on his failure to do so, to pay her the sum of three thousand dollars, with interest, etc., that being the amount inherited by her from her mother, and in the hands of her tutor.
An order was issued by the clerk of the District Court to the defendant, *54 requiring him to file an account of tutorship as prayed for; but no account was ever filed.
A judgment by default having been entered against the defendant, his counsel moved to set it aside, and that he have leave to file his peremptory exception, which was of the following tenor: “John W. Stilley, the defendant in the above-entitled and numbered suit, now appears, and asks .to be hence dismissed, with costs, because the plaintiff has stated and shown no cause of action, inasmuch as the defendant is not and never was the tutor of Sarah Ann Stilley, in which capacity he has been sued, and lias been required to account and answer. Excepting thus, he asks for judgment accordingly.
The plaintiff subsequently took a rule upon the defendant to show cause why the peremptory exception, filed after a default, should not stand as an answer to the merits.
The Court ordered the same to stand as an answer, with leave to the defendant to file an amended answer, and on the day following the defendant filed his amended answer. Besides pleading therein the general issue, and asking for a trial by jury, he says that he never administered the estate of the mother, nor was appointed tutor of the plaintiff, nor was there ever any estate to administer, or left by the mother of the plaintiff, and he prays to be dismissed, with his costs.
This amended answer was excepted to by the plaintiff, because it changed the substance of the defence, as made in the peremptory exception, filed after judgment by lefault, and which has been ordered to stand for an answer. That the said amended answer, containing a general denial, deprives the plaintiff of the benefit of the admissions made in the original answer, and compels him to prove facts that have been admitted by Hie pleadings.
The plaintiff prays that the said exception be sustained, and that the said amended answer be disregarded on the trial of the cause. The Court sustained this last exception, so far as it relates to the general issue contained in the amended answer, which the Court considered altered the substance' of the defence in the original answer, but ordered that the exceptions be dismissed, so far as they applied to the allegations in the said amended answer, as alleged that the said defendant was never appointed or administered as tutor of the plaintiff.
The defendant took a bill of exceptions to the last decision of the Court. It was stated in the bill that “ at the trial of the exceptions made by the plaintiff to the amended answer of the defendant, the counsel for the defendant insisted that the said amended answer was valid, and should stand as consistent with the former pleadings in the case; but the Court ordered that a part thereof be disregarded at the trial, and made the order non of record, which is to form a part of this bill, etc.
The cause came o,n for trial on the 24th October, 1861, and on that day the defendant filed, what he termed, peremptory exceptions. They were dilatory, and should have been pleaded limine litis, and were therefore not noticed by the Court."
There was a judgment in favor of the plaintiff for the full amount claimed.
A new trial was granted, and four years after the case was submitted to *55 a jury, -when the plaintiff, relying on the pleadings and the admissions therein contained, introduced no testimony; whilst the defendant proved upon the trial that the plaintiff’s mother died so poor as to leave no means to pay her funeral expenses.
There was a verdict for the defendant, and the plaintiff, after an ineffectual attempt to obtain a new trial, appealed.
During the progress of the trial, the plaintiff took two bills of exception, one to the admission of the testimony of a witness produced by the defendant, to prove his wife’s poverty at the time of her death, on th¿ ground that the said testimony went to contradict the admissions contained in the defendant’s original answer, not traversing the fact charged in the plaintiff’s petition,'that the defendant had received property of the value of three thousand dollars from the estate of the plaintiff’s mother; and the other, to the charge of the Judge to the jury, that the peremptory exception filed on the 20th October, 1859, and ordered to stand for an answer, was to be considered in the nature of a demurrer, and not equivalent to an admission of the facts charged in the petition, and'not specially denied in the said peremptory exception or original answer; but, that the said exception or answer had to be taken in connection with the amended answer containing the general denial; that the said amendment or general denial was admissible, and did not change the nature of the defence; and also to the refusal of the Judge to charge the jury that the said original answer or peremptory exception, did contain admission of all the facts stated in the petition not specially denied, and could not be withdrawn by the general issue subsequently pleaded in the amended answer, filed on the 16th May, 1860.
The question raised by these bills of exception, and otherwise during the progress of the suit, all centre in the one query, whether the exception filed on the 20th October, 1859, after the rendition of judgment by default was, by the rules of pleading established in our courts, an answer to the merits, or if it was so treated by the defendant himself. If that exception was not an answer, to what was the amended answer subsequently filed, a supplement ? And if it was an answer, how could it be amended so as to change the substance of the issue joined? The defendant deemed it an answer, because he filed a supplemental or amended answer to it,' without any objection to the exceptions being considered an answer, and afterwards insisted upon the validity of the supplemental answer, and its consistency with the former pleadings. Did the supplemental answer change the substance of the original answer ? It certainly did, and should therefore not have been allowed. Art. 419-420, C. P. Abat vs. Bayon, 4 N. S. 518.
The only defence set up in the original answer was “that the defendant is not and never was the tutor of Sarah Ann Stilley, in which capacity he has been sued, and has been required to account,” and that fact required proof, which, however, was supplied by legal presumption, as the petition charged the defendant with having, as her natural tutor, received and administered the plaintiff’s share in her mother’s succession, amounting to three thousand dollars, which was not denied.
The only issue, therefore, raised was one of law, and the plaintiff was not bound to prove the allegations of her petition, which were not denied *56 "by the answer. See 14 An. Aiken vs. Bedford, 4 N. S. 616; Austin vs. Latham, 19 La. 90.
The opinion expressed by us that the exception filed by the defendant in this suit on the 20th October, 1859, is an answer to the merits, every question raised by either party in the suit is disposed of, and the plaintiff by the admissions in his answer, having made out her case, the verdict of the jury and the judgment of the Court thereon must be set aside and reversed.
It is therefore ordered, adjudged and decreed that the verdict of the jury be set aside, and the judgment of the District Court thereon be annulled, avoided and reversed. It is further ordered, adjudged and decreed that the plaintiff, Sarah Ann Stilley, wife of William Jones, have judgment against and recover from the defendant, JohnW. Stilley, her father and natural tutor, the sum of three thousand dollars, with legal interest from legal demand, to wit: 9th July, 1859, and that he pay the costs in both courts.
Petition for a Rehearing, by defendant and appellee.- — -The petition of J. W. Stilley, defendant and appellee in the above case, respectfully shows:
That the opinion of the Court delivered in this case is erroneous, (as the defendant considers) and therefore he presents most respectfully this petition for a rehearing.
The plaintiff claims S3,000 as the amount of the share of the property, real and personal, left in the parish .of Livingston by her mother, at her death, and which was administered by the defendant, her father, since 1837, and for which “ he has never rendered an account of his administration or the estate of her mother
Judgment by default was taken against the defendant, which was set aside. “ Ou motion of G. W. W itfcerston, the default is set aside, and he have leave to file a peremptory exception.”
Tire peremptory exception was filed, and is as follows:
‘ ‘ John W, Stilley, the defendant in the above entitled suit, now appears and asks to bo hence dismissed with costs, because the plaintiff has stated and shown no cause of action whatever, inasmuch as the defendant is not and never was the tutor of Sarah Ann Stilloy, in which capacity he has been sued, and has been required to account or answer. Excepting thus he asks for judgment accordingly. G. W. Watterston, defendant’s attorney.”
It is unnecessary to notice any other part of the pleadings, proceedings or any of the bills of exceptions in this case; as the defendant will confine this application principally to a review of the opinion of the Court on this one point — the force and effect of this peremptory exception, filed by Judge Watterston for the defendant. What did he traverse by this exception ?
It is clear, beyond any doubt, the defendant thinks he may safely assert that here was an issue of fact, formed by this exception.
“ The defendant is not, and never was the tutor of the plaintiff, S. A. -Stilley,” and consequently never administered her property.
It was necessary, on the part of the plaintiff to make this allegation. The defendant denies it.
Certainly, then, the plaintiff must make proof of it, for it was directly traversed.
The defendant believes this issue was inadvertently overlooked by the ■Court, and has not been passed on in the opinion.
What proof did the plaintiff give to support this averment? None.
Will it be said that the plaintiff states in her petition that she is the daughter of the defendant, and he has not denied that allegation; consequently, that he was her natural tutor?
*57 This is a non sequitur. Nowhere in the petition is it alleged that her mother was legally married to the defendant, or that she was the lawful issue of the marriage.
This was an averment indispensable, because it would still be consistent with truth, that the defendant was her father, if she had been a natural child; but, to constitute the defendant a natural tutor, there must be the allegation of a lawful marriage.
The petition must be taken strongest against the plaintiff, as to all allegations not contained in it. No allegation can be supplied, if wanting. No proof could be admitted of any fact not alleged. 2 Hennen’s Digest, 1155, No. 3. , ’
There was a fault in the pleadings, a defect in the averments, and the first fault in pleadings is always visited on him who committed it; a rule fully established in pleading according to the common law, and recognized as correct by our Supreme Court. 3 N. S. 648, Abert vs. Bayon.
It might be sufficient for defendant to urge, if this case is to be decided by strict and technical rules of pleading, that the first fault was committed by the plaintiff. 7 Co. 10. 5 Bacon’s Abridgment, 339.
“If under the liberal mode of practice wisely established in this State, such strictness be not necessary, still the rights of the parties under the evidence offered are not the least altered or impaired, and they have the same right to insist at the trial, that the plaintiff has failed to show a cause of action that they would under a more technical system by taking advantage of it in pleading.” Such are the words of the Court. 3 N. S-648, Abert vs. Bayon. Taking then all the facts alleged in the petition to be true, they do not make the defendant to be the natural tutor of tlio plaintiff
The evidence of the petitioner does not establish the capacity of the defendant where he has denied it. Averment and proof of the marriage of the defendant and the mother of the plaintiff, was absolutely requisite. But no such allegation was made, or evidence given to snpport it. Consequently the plea of defendant was good, and a judgment of a nonsuit should be entered as the counsel for plaintiff in the close of his first brief suggested, (page 9 of the first brief) and considered probable.
But supposing the allegation in the petition, that the plaintiff is the daughter of the defendant, is sufficient to prove that he and her mother were married, and she is the lawful issue of such marriage, did that make the defendant the tutor of the plaintiff ? It is denied.
It is conceded to be the general rule, that the legitimate father is the only person, after the death of the mother, entitled to the tutorship of the issue surviving, and that he may be compelled to take upon himself the office.
But he must do this in the form required by law, be recognized and appointed by the Court of Probates, take the oath of office, and comply with all legal formalities, make an inventory, cause the appointment of an under-tutor, etc. “The appointment of a tutor to a minor belongs to the Judge of Probates of the place of domicil of the father.” C. P. Art. 944.
“It is the duty of the competent Judge * * to make the appointments the manner hereafter provided.” C. P. Art. 948.
“ If it be the father of the minor, who presents the petition claiming his tutorship, the Judge shall confer it on him, only requiring of him an oath to perform the duties well and faithfully.” C. P. Art. 949.
Now the evidence fully establishes the fact, that no succession of the mother was opened in the parish of Livingston, where she died, and where the petitioner alleges the property, real and personal, was situated; nor was there made therein, any appointment of tutor to the petitioner.
See the evidence of Terry and D. Settoon, (pages 54 and 55,) the two clerks of the Court for the parish of Livingston, who testified to an examination of the records, and that no such proceedings were to be found among the records in the office.
*58 There were no proceedings to compel the defendant to accept the office of natural tutor to the plaintiff.
The official character of natural tutor, therefore, never existed, as regards the defendant, and the averment in this peremptory exception is sustained. The jury found for the defendant, the plaintiff should be nonsuited.
But it will be said that the defendant, the father of the plaintiff, is responsible in damages to the plaintiff' for his neglect of duty, for not taking possession of the real and personal estate of the minor child, which she avers was situated in the parish of Livingston, in neglecting to make an inventory thereof as required by law, and for his neglect to procure the appointment of an under-tutor. C. C. 2(56.
“Tutors by nature are bound to cause an inventory to be made, and an under-tutor to be appointed.”
“In every tutorship there shall be an under-tutor, whom it shall be the duty of the Judge to appoint at the time the letters of tutorship are certified to the tutor.” O. C. 300.
The Civil Code provides for the security of the minor’s estate, that all his relations residing within the parish are bound to apply to the Judge for the appointment of a tutor. O. C. 290. And if they neglect this duty, they are responsible in damages to the minor. C. C. 292. And anyone may give information to the Judge, when an appointment of tutor is necessary. C. C. 294. So the interest of minors is amply secured.
Now, in case of the neglect of the father to require letters of tutorship to be granted him, what is the action of the minor against him? Is it to render him an account of his administratorship, which he never undertook, or to make him responsible for damages incurred by his neglect?
These are important question of practice which may frequently occur, and should now be solved, when they are directly presented in this case for adjudication.
The Court is respectfully urged to consider the rules of pleading established by three Judges, Mathews, Martin and Porter, to whom our jurisprudence is so much indebted; and who were the founders of it in its infancy, and who were inferior to none who have since occupied their seats.
They say, emphatically, that “under the mode of practice wisely established in this State, strict and technical rules of pleading are not necessary; still the rights of parties under the evidence offered, are not the least altered or impaired; and they have the same right to insist at the trial that the plaintiff has failed to show a cause of action, that they would have under a more technical system by taking advantage of it in pleading.”
By this mode of practice the defendant claims to be judged. He invokes it, and will abide by it.
In his peremptory exception, he avers that the plaintiff has shown no canse of action, “inasmuch as the defendant is not and never was the tutor of Sarah Ann Stilley.”
The fact of tutorship was here at issue. The plaintiff offered no evidence to sustain it. The defendant gave convincing proof that he never had been tutor, or acted as such, and the jury found in his favor. On these pleadings the Court condemns the defendant to pay $3,060, with interest from 1859, till paid, with costs.
The Court will please reflect on, and examine the amount and effect of this opinion. The petitioner states that she had real and personal estate in the parish of Livingston to the amount of $3,000, but she describes no lands or movables of which it was composed. (What that estate was we cannot learn from the pleadings or evidence, except that the evidence given by defendant, which shows that the mother of the plaintiff was buried at the expense of a stranger. The husband, defendant, being in no condition to pay for her interment.)
We will suppose, or grant for sake of argument, that this real estate was a tract of 640 acres of land of the value of $2,500, and a stock of *59 cattle thereon, personal property of the value of $500, making $3,000, which, should be restored to the plaintiff, as her share of her mother's estate. Now it is certain that this real estate, which the petitioner avers belonged to her, be it worth $2,500, or less, or more, must still be in parish of Livingston, and she, as the owner, can take possession thereof, or recover it from any usurper. Is the defendant bound to pay the value of this property, real and personal, whatever it may be, that $3,000 put on it by the petitioner, and the petitioner retain the right tf> sue for and recover the identical property — the tract of land and stock or cattle? or, if the defendant pay the $3,000, should he not at least be tilled, iu equity, to own the land and cattle, and have a decree making them his property afier he has paid their value to the plaintiff ?
Shall the plaintiff have the full benefit of a decree, under the opinion of the Court, for the $3,000, and the defendant have no decree for a' conveyance of the property, the full value of which he shall have paid to the plaintiff? Or shall the plaintiff get full compensation for her demands, with the right to sue for the specific property, the defendant to get nothing ?
Such must be the result of the opinion of the Oourt if it stands. But this would be manifest injustice, a consummation of iniquity, wrought om by the machinery of a court of justice.
It could never bo the intention of this Honorable Court to permit the plaintiff to perpetuate, with impunity, what may justly be termed a crime, at the sacrifice of her own father, who must be reduced to penury if this opinion becomes the judgment of the Court, as it would take the means away from him on which lie is to live.
Is the plaintiff without redress then? No. She can obtain the identical real estate in the parish of Livingston, left by her mother, if she really left any, also the personal property, if found to be in existence.
But if the redress of the plaintiff by this conrse is not complete, the defendant will submit to pay any damages suffered in consequence of his neglect to protect any estate, real or personal, which she shall show she inherited from her mother, which he should have administered.
This brings to the view and consideration of the Court, the most important point of defence, which the defendant confidently assumes he lias a just and legal right to present for decision, and to obtain one in his favor. Under the facts established conclusively by the evidence, and admitting all the facts, which can be assumed fairly from the pleadings, the case of the plaintiff can amount to nothing more than she had an estate inherited from her mother, which the defendant, her father, neglected to take possession of as her tutor, and he is responsible to her for any damages she has suffered by such negligence. Now, the defendant desires to take advantage of these facts, by pleading under the liberal mode of practice established in this State (without being confined by strict.and technical rules) that the plaintiff has mistaken her action. 3 M., N. S. 619, Abert vs. Bayon.
This would appear to have been the object of Judge ‘Watterston when he filed the pi remptory exception, aud which can be fairly and legally urged under the averment therein, that the plaintiff had shown :no cause of action. The cause of action stated by plaintiff arises from the duties imposed on him in his office of tutor. The evidence shows he never took that office upon himself, and can be responsible only from his neglect to exercise it. The plaintiff seeks to make him liable, because ho entered on the duties of her tutor. But the evidence shows that if ho is liable for anything, that is from a neglect to comply with a duty imposed on-him by law.
It will be in vain for the plaintiff to reply, that this distinction is too nice, metaphysical or technical, and - not according to rules of pleading.
It comes with a very ill grace from tbe plabitiff to object- to tce.bnie.alily or special pleading. What is it on which she hopes to obtain a jmlstnent against her father, except by pushing to the cxln m - point of teuhnicuiilj *60 and special pleading, the case raised by the peremptory exception of Judge Watterston ?
She urges, that by the act of the Judge, in malting the defence of her father to rest on a peremptory exception, she has obtained an advantage which she never could have gained by the facts of the case — facts, which though given in evidence on the record, and uncontradicted, have been excluded, from his defence. Her father proves that he had not the means at the death of the mother to pay for her funeral expenses. This evidence, by a bill of exceptions, has been excluded under a very technical objection.
The defendant cannot be repulsed when he thrusts the same weapon in defence; he makes not the blow — he only parries it.
The counsel for the defendant does not wish to introduce into our courts a technical system of special pleading, similar to that prevalent in the common law, nor to give such a strict construction to the Articles of the Code of Practice as will cripple the parties, or stretch them on the bed of Procrustes.
He wishes, however, to present distinctly and respectfully the principles which should govern the Gourt, and aid it in separating truth, from falsehood; in attaining justice sincerely, and defending the unwary from the machinations of the cunning and the unscrupulous; in short, to carry out the principles of the Supreme Court as tersely, clearly and justly enunciated in 3 M., N. S. 619, Abert vs. Bayon.
Pleading is nothing more than the correct application of logic to a law suit. If the pleadings are not logical they cannot be correct, and can never elicit the truth or promote justice. Warren’s Law Studies, 707-747.
More than two centuries and a half ago, Lord Coke lamented that “ many a good cause is daily lost for want of good and orderly pleading, ” and he observes that “ more jangling and questions grow upon the manner of pleading and exceptions to form than upon the matter itself, and infinite causes lost or delayed for want of good pleading.” Co. Lit. 303, A, and Blackstone assures us “a man by mispleading, may, in some cases, lose his property, yet the law will not suffer him by such niceties to lose his life.” 4 Blac. 334.
Such niceties should be avoided here, and therefore our Supreme Court has established the rule above quoted. 3M., N. S. 649. A man should never lose his life or his property for mispleading.
•The Court has always the power to prevent such a catastrophe.
It will be very easy to do so in the present case, as by a proper consideration of the facts presented in proof, no injustice wilí be done to either party. The action against tho defendant, as tutor, is denied; but the right to render him accountable for neglect to take possession, and make an inventory of the plaintiff's estate is reserved to her, in which all claims she has can be adjusted, or the plaintiff may open the succession of her mother and recover whatever part of it remains, of real or personal property, in the parish of Livingston. Complete justice can be obtained in either of these two actions. The defendant will meet them immediately, and be prepared to vindicate himself successfully.
If the plaintiff claims from defendant, as her natural tutor, and does not aver the marriage with her mother, and the petition is defective for the want of this averment, and shows the first error in pleading, and for that reason is insufficient in law to maintain the action, and advantage can be taken of this defect on the trial of tho case, as settled by the rules of practice, sanctioned by the Supreme Court (3 M., N. S. 649, Abert vs. Bayon) must not the defendant, from the allegations in the petition, be clearly considered the natural father of the petitioner?
_ This is admitted. But in that case, still the petition would be defective, and would not show any cause of action; fur, unless the natural father has acknowledged his paternity, he is not entitled to the tutorship. This acknowledgment is not found in the petition. C. C. Art. 274.
“The father is of right the tutor of his natural child, acknowledged by him.”
*61 Now, by the settled principles of pleading in all systems of jurisprudence, the petition, declaration, or bill of complaint, should contain all the legal averments necessary to show the right of the plaintiff, and to maintain the action. If deficient in any one particular, no cause of action is shown, and no judgment can be maintained for the plaintiff; there must be a nonsuit against him.
It is a maxim in pleading, that everything shall be taken most strong against the party pleading; or rather, if the meaning of the words be equivocal, they shall be construed most strongly against the party pleading them; for it is to be intended that every person states his case as favorably to himself as possible. 1 Chitty’s Pleading, 241. Co. Lit. 303, b. Stephens on Pleading, 378.
Ambiguum placüim, interpretan debet contra prof erentem. Co. Lit. 303, b.
Now, the rules of pleading quoted above, as derived from the common law, have been practically incorporated into, adopted and used in our courts. Indeed the decisions of our Supreme Court have gone farther than would be admitted in the courts of common law for tin- enforcement of strict pleading. Take a single case one of many that might be quoted. La. State Bank v. Senecal, 9 La. 225. This was an action against the endorser of a promissory note.
The petition averred the indebtedness of the defendant to the amount of the note; but no allegation was found in it, that the defendant had been notified of the protest for non-payment by the maker. A judgment by default was taken, and proof given of the notice. After the judgment by default had been made final the defendant appealed, and the plaintiff was nonsuited in the Supreme Court.
1. A judgment by default was taken on the failure of the defendant to answer, whereby an issue was joined, (coniestatio litis) and “ the defendant was presumed, by his silence, to have confessed the justice of his adversary’s demand,” and therefore the plaintiff wa>' allowed to proceed with his proofs in order to have his judgment confirm".!. C. P. Art. 360. The plaintiff did accordingly proceed with his proofs, and made out a full and complete case of indebtedness.
But when the case came up before the Supreme Court, this presumption was negatived; the language of the Art. 360, C P., was considered as confused and illogical, and to a certain extent a contradiction to Art. 312, C. P. 1 A. 117, Fink v. Martin et al., and a judgment of nonsuit was entered.
2. This case goes further than at common law, is admissible, under its pleadings; for, after verdict and judgment, it would be too late to take advantage of such a defect. Stephen on Pleading, 148-151, pp. 164, 168 of the 1st edition.
_ 3. This ease proves that all necessary allegations to render defendant liable must be found in the petition, and if any are omitted advantage of them may be taken, after judgment on appeal, by the defendant, (see 17 La. 82, Landry v. Baugnon) and it goes further than is allowed at common law. 3 Black. 394.
4. This case also proves that after a judgment by default, evidence cannot be introduced to remedy any defects, deficiencies or omissions in the petition. 12 Rob. 518, Young v. Talbot. 2 Hennen’s Dig. 1155, Nos. 3, 5 and 6.
A number of other cases of the same kind might be referred to, found in the decisions of the Supreme Court.
So that on a review of our practice, more nicety of pleading is required in many particulars than at common law.
The defendant does not believe that it is necessary, in his case, to resort to all of the niceties of pleading of any system; he asks only to be governed by the practice settled in this Honorable Court, and is willing to put the decision of his rights on the precedents given therein.
The most stringent rules of pleading have been used to reverse the judgment which was given in his favor on the verdict of the jury.
He asks the Court to apply them equally in his favor.
*62 He seeks not to obstruct or defeat the rights of the plaintiff. By a judgment of nonsuit, the plaintiff is not precluded from renewing her action in proper form, with legal averments, whereby she can recover whatever property, real or personal, in the parish of Livingston, she is entitled to by inheritance from her mother, or compensation for any damages sustained by the neglect of her father, the defendant. On the contrary, the defendant is precluded from all equitable re,course for compensation for whatever amount he may be compelled to pay under a judgment against him.
The claim of the petitioner arises out of her share in the estate of her mother, which she avers has been administered upon by her father. It is only a share of the estate which she claims; the other claimants of other shares are not brought before the Oourt, consequently their rights cannot be adjudicated on in this action. The defendant presents to the Court this situation of the estate of the mother of the plaintiff for consideration.
If the defendant pays the amount of the share due plaintiff, $3,000, with interest, should he not in equity be entitled to a judgment for the same amount against the other heirs in the settlement of the estate? And should not the other heirs be made parties to settle the whole estate as is required in every Court of equity?
It is the plaintiff herself who, by her petition, brings this state of the facts of the case before the Court, and consequently the Court can properly notice it to do justice to all parties, which can be done by remanding the cause; even this the counsel for the plaintiff, in his second brief, suggested as a proper course for the Court. See the manuscript amendment of the brief made in the handwriting of counsel of plaintiff, now filed in Court.
Thus, justice can be done to all parties, and all further suits avoided. All the parties in interest should be made parties to the suit.
The counsel for defendant does not object to the determination of the Court to hold suitors to correct pleadings in all actions. On the contrary, he believes that an adherence to such a rule will tend exceedingly to make good lawyers. It will prevent the result which Tindal, the Chief Justice of the Common Pleas of England, said in Parliament “ would become an unmitigated evil, when the law is made too cheap. ” Warren’s Law Studies, 717.
Although die petition does not state the nature of the plaintiff’s title, an affidavit filed on her behalf, by her husband, discloses the important fact that it arose out of the dissolution of the community on the death of her mother (pp. 36, 37 of the record) and he obtained a commission for taking the testimony of Rachel Tucker, by whom he expected to prove the amount and value of the property owned or possessed by the defendant at the dissolution of the community with his late wife, and that the defendant took possession of and administered the same, as also the fruits, issues and revenues thereof; that plaintiff cannot safely go to trial without said testimony of Rachel Tucker. To this affidavit of the husband of the petitioner, (pp. 36, 37 of the record) the defendant earnestly requests the attention of the Court.
First, it proves that the plaintiff was not, and could not be surprised, as his counsel in his brief pretends, by the introduction of the evidence by defendant, that there was no estate inherited from the mother of the plaintiff. It also shows that the plaintiff’s counsel believed it requisite on his part to prove the amount of property inherited by his client from her mother. It furthermore shows that it was understood by (he counsel of plaintiff, that a traverse was made as to the amount inherited, and the administration of it. This the plaiutiff wished to prove, because it was •involved in the pleadings; because it was incumbent on her to prove it; beeanse she could not safely go to trial without it.
Now all parties at the trial came prepared, as far as was in their power, to prove the facts on which the merits depended.
The affidavit of plaintiff to obtain the testimony of Rachel Tucker was *63 made and filed on the 221 October, 1861, and an order was given on the same day “to take her testimony, to enable the plaintiff to safely go to trial, ail'd prove that the defendant took possession of and administered the property of the plaintiff, inherited from her mother at the dissolution of the community.” Read tne affilavit, pp. 36, 37 of the record.
This a(H lavit demonstrates to the Court that this suit properly embraced the settlement of the succesi-ion of the mother of the plaintiff, in which she avers in her petition that she hid a share; other parties not before the C mrt had shares with her, and should have been made parties herein.
“ It is the constant aim of a court of equity to do complete justice by deciding upon and settling the rights of ail persons interested in the subject of the suit, to make the performance of the order of the Court perfectly safe to those who are compelled to obey it, and to prevent future litigation. For this purpose all persons materially interested in the subject, ougl t generally to be parties to the suit.” Milford’s Pleading, by Morton, lt~;9.
The succession, however, is before the Court by the petition, for settlement as regards one of the heirs.
Will not, and should not the Court look into the succession under the pleadings for a settlement of it? From the evidence found on the record it fully appears that the succession amounted to nothing, as there was not enough in it to pay for the interment of the mother of the plaintiff, according to the uneontradicted evidence of T. G. Davidson, Esq. It is certain, then, beyond a doubt, that the plaintiff is justly entitled to nothing for her share in the succession of her mother. Yet, if the opinion of the Court, based on technical pleadings becomes a final judgment, the plaintiff recovers §3,000, with interest, from 1857.
And when the settlement of the succession comes up before this Court, as it possibly may, another sot of heirs for their share may have judgment for nothing, because it consisted of nothing. A most striking contrast in the result in lawsuits and the administration of justice.
Those facts are patent on the record before the Court, and show a case, in the classical language of Blaekstone, 3 Black. 392: “ where the rigorous exaction of extreme legal justice is hardly reconcilable to conscience.” The reports of the two cases hereafter in the Annual Volumes of the Reports of the State, will offer n?> encouragement to litigants in the defence of their rights, and will reflect no eminent credit on the administration of justice.
According to the strict rule of pleadings in courts of common law, when judgment thereon is to be rendered, the Court will arrest judgment, if from an examination of all the pleadings in the whole case it appears that the plaintiff is not entitled to it, though he may have gained an advantage by the incautious pleadings of defendant’s attorney. 3 Black. 393, 398.
It must be most apparent to the Court, in this case, that if the defendant is condemned, it must be through the “inadvertence” in the pleadings made by his attorney, and the advantage obtained thereby, without regard to the facts at issue. 3 Black. 395. All the facts disclosed by the record, though not stated in the pleadings, can be used for the defence by the liberal rule of pleading in the Courts of Louisiana. The affidavit now brought to the notice of the Court (from pp. 36, 37 of the record) is the most unexceptional disclosure which could be made by the plaintiff, and it throws light upon the whole case. The defendant wishes that the plaintiff may have the whole benefit of it, and obtain in full the evidence as to the amount of the estate of her mother from Mrs. Rachel Tucker.
Well might the counsel for the plaintiff suggest that “ the judgment should bo reversed, as erroneous, since it is final on the merits, when it ought to be at least on’v a judgment of nonsuit;” (p. 9, of his first brief.) But this he has modified by a manuscript addition, “rather it should be remanded,” etc. See the brief now presented, p. 9, in the handwriting of the counsel for plaintiff.
*64 In. the brief of plaintiff (p. 9) it is stated: “He (the defendant) became liable as an usurper, though he failed to take the oath or give bond as tutor.” This acknowledgment, as to the proper manner of pleading, is all the defendant asks, for neglect of which he prays the plaintiff may be nonsuited.
But at most the plaintiff could only be entitled to a judgment for the restoration of her share of the property, for it is not alleged to be lost or alienated, or not to be in existence, or to have an account rendered which she may contest, which v/as the order given on the filing of her petition, according to her prayer.
The Court will please excuse the extent of this brief. But as its decision will crea1 a precedent of much importance, and for frequent use, á reason for its length is apparent, independent of the justice it claims.